Good morning. May it please the Lord. My name is Mary Fabrick. I graduated in 2009. I'm a senior by law student from Boston College Law School. I'm here today to serve as your attorney general. We represent the students here today in the courtroom. Let's take a look at the court where especially we should reserve two minutes for a moment. Starting with Amber Sandoval, there are four VA errors. First, on the expiration. Mr. Sandoval lied, but he didn't realize he was not committing all lies. He stayed in adverse credibility finding. Mr. Sandoval lied, he said he gave corrections, and then provided an explanation, being a smothered and smothered by the report. Jeff Mazzetto, R.J., R.J. and B.I.A. failed to address and explain why his explanation was not receivable. Then there's the third error. The lie is secure. Mr. Sandoval did not change the content of the report. The lie is that he provided a correction report, which he was not to use, and that is the point of your argument. The liar lied, and did not change the content of the prosecution. Good morning. I'm a law student. I'm here today to serve as your attorney general. B.I.A. claimed that Mr. Sandoval satisfied that he was fighting in 2000, and had no problems between 2000 and 2003. But this is not true. It was the R.J. not Mr. Sandoval who claimed that nothing happened to Mr. Sandoval. In each exchange, Mr. Sandoval stated that he could not remember any bad things in the three-year window. The R.J. only said what Mr. Sandoval actually said. He did not at all cover Mr. Sandoval's state of the business, and did not cover the state of the defense, which means that he is not here to serve as your attorney general. I don't think there's any specific evidence that Mr. Sandoval satisfied that he was fighting for our country. We looked at seven exchanges where Mr. Sandoval had the original intent of the case, and in each one, Mr. Sandoval stated that he could not remember. We actually went back 20 years, so even the record shows that Mr. Sandoval could not remember. Mr. Sandoval reported that he was supposed to be a shorter attorney. He was shorter in his responsibilities as an attorney general than he was as an attorney general. He was shorter, and Mr. Sandoval also offered to provide a corroboration to this entire litigate. That is, he offered you a plea report after you showed him to corroborate the state of the country's failures against Mr. Sandoval and the opportunity to reduce them, reportedly by an error. Returning to the state of the vote, which I mentioned in the first report, I didn't have a sound at that time that overrides Mr. Sandoval's ability to tell the truth. Rather, it was unclear whether Mr. Sandoval had engaged in a lie. Here it is all over again. He mentioned a surrender over whether or not he said no, but the murder and over whether there were sexual findings in that sentence. On the other hand, Mr. Sandoval didn't show a plea report. Mr. Sandoval offered to give the report, and the IJA ignored this offer. This was a red herring. Notably, the IJA found Mr. Sandoval non-credible, and argued that he didn't deserve the report. The IJA has argued on the grounds that Mr. Sandoval did not engage in a legal hearing, but the state's members did find evidence corroborating key issues in his case. The IJA did not conclude the hearing, which sets forth Tom's legal term. In Mr. Sandoval's case, the IJA's intent to present the report as relevant and corroborating evidence. Just as over where it starts out and overall, the IJA should have given Mr. Sandoval the opportunity to present a corroborating evidence. On the omissions wanted by Sandoval, the CIA stated in the IJA's explanation, quote, The CIA did not require a correspondence with one of its limitations to include everything since his interrogation in the written application. Moreover, the IJA did not find this one non-credible, based on speculation over what the IJA had concluded in the application, how he felt about himself. The IJP and Bhandari discovered several errors. First, the omission. Omissions are judged to believe in an existence. The government argues that the omission is not a problem, but it is not. In Alvarez-Sanchez, the omission was erratic based on his surprise. In Alvarez-Sanchez, the omission was erratic based on his surprise. In his two written applications and his oral testimony, only at the end of his hearing did he remove his statement after the IJP's paper time for approval. Of course, the omission, which was to be continued for 20 hours in summary, is not a problem at all. In Alvarez-Sanchez, Mr. Sandoval did not join the summary because he was scared to deal with any physical violence he experienced. Of course, once he told his father, the girl was taken to the heart of the agency. Of course, once he told his father, the girl was taken to the heart of the agency. I do not believe Mr. Sandoval identified a different type of violence than his torment claims. And then, it's hard to recognize, as I'm sure many of you have, that it's his own duty to quote, scrupulously and conscientiously quote and to inquire of, or call it a joke, anyway. And by asking Mr. Sandoval if he had anything else to add to the record, it's not me that he heard. Once Mr. Sandoval heard that the IJP was insisting Dr. Sandoval's claim was a case, the IJP failed to stop the proceedings, failed to tell him that Dr. Sandoval's case, and then failed to schedule a hearing to provide Mr. Sandoval an opportunity to provide his own hearing. I agree. This error of Mr. Sandoval's response to the proceedings and the state's actions in their commitments would foster credibility and even more detail about the prosecution, as well as the evidence by which Dr. Sandoval and her family were able to gain the power of justice and that's all I'm saying is a part of the truth. I'm sorry, that's all I have to say. I would say that it interestingly involves the priorities of legal technology, and that BIA's legal use of tools are involved in what I'm talking about, and they are a weird term, which is usually used to refer to voluntary departure. Those references to the IJP put the BIA at notice that it was challenging the voluntary departure system. Additionally, the purpose of BIA is not to provide alternatives. It's not intended to do that. In terms of awareness of voluntary departure, I agree that the process of criminal conviction was followed by the intervention of the IJP, and I agree that it's not intended to create a disquiet and to eliminate a lot of unlawful and unrighteous action. If there are no further questions, I'm sorry. Well, thank you very much. This concludes my presentation on the voluntary departure of people and the purposes of the hearing. Thank you very much. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good evening. I'm here today to say that we've been involved with the March on Action with the King of Christianity. It's just an honor to be here. I'm sorry. It's just an honor to be here. I think that was a personal experience. I think that's why I'm here. It's just an honor to be here. Even though it was a long, long time, we are sure that it will go on for a long time, too. It was just a long, long time. It's true that we're here now. You can still find us involved in the games, but the games without us are still here. So it's a huge honor. I think, in part, because we want to get to this moment, it's an awesome day. We're here to say thanks to these amazing people who support us. Thank you.  Go great games. Thank you. We'll continue with games as well. Go best in the subscriptions. Thank you. Thank you. I would love to hear from you. Thank you. Thank you. Thank you. Thank you. Thank you.        Thank you. Thank you.   Thank you. Thank you. I appreciate this. This is a reminder, my feelings, she was that was were there and I don't think you should do that. I
judges: Noonan, Bea, Christen